IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Albarr-Ali Abdullah, a/k/a Albert Legare,<br><br>Plaintiff,<br><br>vs.<br><br>Mr. Thomas E. Byrne, *Kershaw C.I. Doctor*; Mr. Donnie Stonebreaker, *Associate Warden at Kershaw C.I.*; Mr. Samual L. Soltis, *Step 2 Grievance Health/Hearing Officer, in their individual or personal capacities*,<br><br>Defendants. | Civil Action No.: 8:16-cv-03000-RMG-JDA<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 27.] Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights by Defendants, who are employees of the South Carolina Department of Corrections ("SCDC"). Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed his this action on August 29, 2016.[1] [Doc. 1.] Defendants filed a motion for summary judgment on January 12, 2017. [Doc. 27.] On January 13, 2017, the Court

---

[1]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). Accordingly, this action was filed on August 29, 2016. [Doc. 1-1 at 2 (Complaint received by prison mailroom on August 29, 2016).]

issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 29.] Plaintiff filed a response in opposition to Defendants' motion on February 13, 2017. [Doc. 40.] Accordingly, the motion is ripe for review.

## BACKGROUND[2]

Plaintiff, who at all times relevant to the factual allegations underlying this action was housed at Kershaw Correctional Institution ("Kershaw"), alleges he received inadequate medical care and treatment. [Doc. 1.] Plaintiff asserts that in January 2016, Kershaw doctor, Defendant Thomas E. Byrne ("Dr. Byrne"), violated Plaintiff's rights under the Eighth Amendment by refusing to prescribe shoes and a knee brace for debilitating pain in Plaintiff's knees, back, and ankles, and by refusing to let Plaintiff see an orthopedic specialist. [*Id.* at 3.] Plaintiff further alleges that Kershaw Associate Warden, Defendant Donnie Stonebreaker ("Stonebreaker"), and Kershaw Step Two Hearing Officer, Defendant Samuel Soltis ("Soltis"), turned a blind eye to Dr. Byrne's actions. [*Id.*] Plaintiff alleges that Defendants' actions have caused him unnecessary pain and suffering and have exacerbated his condition. [*Id.* at 5.] Plaintiff seeks a jury trial, an undetermined amount of nominal damages, damages for pain and suffering, mental and emotional distress, and punitive damages in a sum not to exceed $9,000,000.00. [*Id.* at 7.]

---

[2]The facts included in this background section are taken directly from Plaintiff's Complaint. [Doc. 1.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *See Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private

4

behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendants contend that Plaintiff's § 1983 claims against Defendants in their official capacities are barred pursuant to the Eleventh Amendment [Doc. 27-1 at 3–4]; Plaintiff's § 1983 claims against Defendants in their individual capacities fail because Plaintiff cannot show that Defendants violated Plaintiff's constitutional rights [*id.* at 4–15]; and Defendants are entitled to qualified immunity [*id.* at 15–17].

**Deliberate Indifference to Medical Needs**[1]

Plaintiff contends Defendants violated the Eighth Amendment when refusing to adequately treat his medical condition—debilitating pain in knees, back, and ankles—by refusing to let him see an orthopedic specialist and denying him his once-prescribed knee brace, shoes, and sole inserts. [Doc. 1 at 3–6.] Defendants argue Plaintiff cannot show Defendants were deliberately indifferent to Plaintiff's medical needs. [Doc. 27-1 at 5–15.] The undersigned recommends that Defendants' motion for summary judgment be granted.

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to a prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To establish deliberate indifference, an inmate must allege both that he experienced a deprivation that was "objectively sufficiently serious" and "that subjectively

---

[1]Because Plaintiff asserts claims against Defendants in their "individual or personal capacities" only, the undersigned declines to address Eleventh Amendment immunity and proceeds directly to Plaintiff's Eighth Amendment claims. [*See* Doc. 1 at 1 (caption reading that Plaintiff is suing Defendants "in their individual or personal capacities").]

7

the officials acted with a sufficiently culpable state of mind." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). Negligence or medical malpractice will not establish a sufficiently culpable state of mind. *Id.* at 634; *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Instead, a constitutional violation does not occur unless the medical provider's actions were "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994). An inmate's mere disagreement with the course of treatment provided by medical officers will not support a valid Eighth Amendment claim. *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir.1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir.1981)).

Defendants argue that Plaintiff cannot show that Defendants were deliberately indifferent to his medical needs. [Doc. 27 at 5–10.] In support of their motion, Defendants provide affidavit testimony from Dr. Byrne, who testified that Plaintiff was timely evaluated and properly treated each time he presented medical complaints at Kershaw. [Doc. 27-2.]

In addition, Defendants provide Plaintiff's SCDC medical summary from January 2009, through November 2016. [Docs. 27-3, 27-4.] This summary reflects that Plaintiff has presented on numerous occasions since 2009, with complaints about knee and back pain. [*Id.*] On February 27, 2009, Plaintiff noted good pain relief with Salsaltate for knee, ankle, shoulder, and back pain. [Doc. 27-4 at 13 (Encounter 127).] On June 15, 2009, Plaintiff was seen in the Orthopedic Clinic. [*Id.* at 11–12 (Encounter 138).] The Orthopedic clinician

ordered a nonsteroidal anti-inflammatory drug, a one-time physical therapy instruction visit for Plaintiff to perform his own knee and quad strengthening using a TheraBand, and follow-up as needed. [*Id.*] On September 24, 2009, Plaintiff presented to Dr. Byrne, complaining of knee and back pain. [*Id.* at 9 (Encounter 148).] Dr. Byrne prescribed Ibuprofen. [*Id.*] Plaintiff again described hip, knee, back, and shoulder pain when he visited with Dr. Byrne on January 27, 2010. [*Id.* at 7–8 (Encounter 155).] Dr. Byrne prescribed Naproxen for pain. [*Id.*]

On May 25, 2010, Plaintiff presented to Sick Call with complaints of pain in his shoulders, back, knees, and ankles. [*Id.* at 5–6 (Encounter 168).] Plaintiff reported no pain with the medication, and the Naproxin prescription was refilled. [*Id.*] On October 12, 2010, Plaintiff presented to Sick Call with complaints of bilateral knee pain and back pain. [*Id.* at 5 (Encounter 170).] Plaintiff was wearing a black knee brace on his right knee that he had owned since 1993, and he ambulated without problems. [*Id.*] Crepitus was noted in both knees, but no redness or swelling was noted. [*Id.*] Ibuproprofen was prescribed. [*Id.*]

On October 22, 2010, Plaintiff was seen at the Doctor's Clinic by Dr. Paul Drago. [*Id.* at 4 (Encounter 171.] The doctor noted that Plaintiff had x-rays of the knees in 2008, which showed mild spurs. [*Id.*] During examination, Dr. Drago noted that Plaintiff walked well and, although he noted crepitus in the knees, he also found Plaintiff's knees stable, with no edema. [*Id.*] Naproxen was prescribed. [*Id.*] Dr. Drago refilled the Naproxen in January 2011. [*Id.* at 3 (Encounter 175).] Plaintiff was again seen in March and September 2011, for joint pain. [Doc. 27-3 at 13–14 (Encounters 182, 187).] Plaintiff noted good relief from the medication Indomethacin.

On June 3, 2014, Plaintiff presented to Sick Call, complaining of back, knee, and

ankle pain. [*Id.* at 12 (Encounter 192).] He was not taking any medication at that time. [*Id.*] On November 3, 2014, Plaintiff presented to Sick Call, complaining of continuing knee pain. [*Id.* at 11 (Encounter 194).] Plaintiff was seen by a nurse practitioner the following day. Plaintiff reported that his knees had been hurting since 2008, and that he has "to take Ibuprofen or [he] can't move." [*Id.* at 10 (Encounter 195).] A mild limp was noted, and Plaintiff was wearing bilateral knee braces. [*Id.* at 11.] Plaintiff requested new knee braces. [*Id.*] Naproxen was prescribed. [*Id.*] The nurse practitioner also ordered labs, x-rays, and "new knee braces to replace the old ones, if possible." [*Id.*]

Plaintiff's x-rays on November 10, 2014, showed mild narrowing of the medial joint space in the right knee and degenerative atrophy with moderate narrowing of the medial in the left knee . [*Id.* at 9–10 (Encounter 200).] Dr. Byrne saw Plaintiff on November 19, 2014. [*Id.* at 9 (Encounter 202).] Dr. Byrne noted a long history of knee problems and that Plaintiff wanted new knee braces; however, the braces were found not to be medically necessary. [*Id.*] Mobic was prescribed for pain. [*Id.*] Because Mobic was found to help, it was renewed in January 2015. [*Id.* at 8 (Encounter 205).] Mobic was again renewed as requested in May 2015. [*Id.* at 7–8 (Encounter 209).] At Plaintiff's request, he was provided with forms to request outside medical items, including a new knee brace. [*Id.*]

Dr. Byrne saw Plaintiff in July 2015. [*Id.* at 6–7 (Encounter 212).] Plaintiff requested a bottom bunk restriction, shoes from home with arch supports, and two new knee braces. [*Id.*] Dr. Byrne refused to sign off on the knee sleeves and found that because Plaintiff had good condition New Balance shoes, it was not clear that Plaintiff needed new shoes from home. [*Id.*] Plaintiff was denied new shoes in August 2015, because they were not orthopedic shoes. [*Id.* at 6 (Encounter 213).] Plaintiff was also notified that he was not

approved for new knee braces. [*Id.* (Encounter 214).]

On October 2, 2015, Plaintiff presented to Sick Call. [*Id.* at 5–6 (Encounter 218).] Plaintiff was referred to the doctor for the knee brace problem. [*Id.*] Plaintiff was seen on October 15, 2015. [*Id.* at 6 (Encounter 220).] Plaintiff again requested new knee braces. His right knee brace was noted to be in fair to good condition and left knee sleeve was intact. [*Id.*] Plaintiff's Mobic prescription was renewed, and Plaintiff was placed on a four to six week exercise weight loss plan and told that the left knee brace request would be revisited. [*Id.*]

On December 1, 2015, Plaintiff picked up his insoles that were approved on November 30, 2015. [*Id.* at 5 (Encounter 223).] On that same day, Plaintiff reported to Sick Call to renew his Mobic prescription, which was approved. [*Id.* at 4 (Encounter 224).] Plaintiff again complained of knee, back, and shoulder pain when he saw Dr. Byrne on January 7, 2016. [*Id.* (Encounter 226).] Dr. Byrne noted that Plaintiff had no reason to see an orthopedist. [*Id.*] Plaintiff renewed his request for a new knee brace from home, but Dr. Byrne denied the request on January 20, 2016, noting that Plaintiff already had knee braces and that the brace was not medically necessary. [*Id.* at 3–4 (Encounters 227, 228).] On January 27, 2016, Dr. Byrne informed Plaintiff that he would not approve his shoes from home because they too were not medically necessary. [*Id.* at 3 (Encounter 230).]

On June 2, 2016, Plaintiff presented to Sick Call, complaining of joint issues. [*Id.* at 2 (Encounter 233).] The nurse noted decreased range of motion in both knees, gait within normal limits, and no edema. [*Id.*] Mobic was renewed. Plaintiff returned to Dr. Byrne on September 20, 2016. [*Id.* at 2 (Encounter 234).] Again Dr. Byrne informed Plaintiff that he would not approve the shoes and knee brace from home because they were not medically

11

necessary.  [*Id.*]  Dr. Byrne repeated the same in October 2016.  [*Id.* (Encounter 235).]

As an initial matter, the undersigned is not convinced that Plaintiff's alleged medical needs constitute a sufficiently serious medical condition.  "A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F.Supp. 435, 454 (N.D. Ind. 1981)).  Dr. Byrne avers that knee braces and orthopedic shoes are not medically necessary treatment.  Plaintiff has not presented any evidence to refute Dr. Byrne's determination that a new knee brace or orthopedic shoes were not medically necessary.  Thus, the undersigned cannot find that Plaintiff's desire to receive new shoes or new knee braces amount to sufficiently serious medical needs mandating treatment.

After a careful review of the record, the undersigned finds that even if Plaintiff's medical needs are sufficiently serious, he has shown nothing more than a disagreement with the medical treatment provided, not that he was denied medical treatment.  As stated, disagreements with the treatment provided by prison medical staff do not in themselves rise to the level of deliberate indifference necessary to violate the Eighth Amendment.  *Russell*, 528 F.2d at 319.  Plaintiff has failed to show that he had a serious medical need of which Defendants knew about and consciously ignored.  Plaintiff has not offered evidence that would support a finding that Defendants knew about and intentionally or with reckless disregard ignored a risk posed by Plaintiff's condition.  Plaintiff has disagreed with some aspects of his medical treatment received while incarcerated, but it is undeniable that

12

Plaintiff has received prompt and continual care throughout his stay at Kershaw. There is no basis for a reasonable juror to conclude from this record that an Eighth Amendment violation resulted. Accordingly, the Court finds Defendants' motion for summary judgment should be granted as to Plaintiff's deliberate indifference claims.[2]

---

[2] To the extent Plaintiff attempts to raise a claim of medical deliberate indifference against Stonebreaker or Soltis, his claim must fail. To establish a claim for denial of medical care against non-medical personnel, a prisoner must show that the non-medical personnel failed to promptly provide needed medical treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier*, 896 F.2d at 854. Moreover, because most prison officials are not trained medical personnel, they are entitled to rely on the opinions, judgment, and expertise of medical personnel concerning the course of treatment that the medical personnel deemed necessary and appropriate for the prisoner. *See id.* Plaintiff has made no showing that any non-medical personnel defendant engaged in the type of conduct required by controlling case law to establish an Eighth Amendment medical claim of deliberate indifference. Further, to the extent Plaintiff bases his claims against Stonebreaker or Soltis on the theory of supervisory liability, his claims are without merit. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[ ]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted).

Here, Plaintiff has failed to establish a § 1983 claim based on a theory of supervisory liability. First, Plaintiff failed to show Stonebreaker or Soltis had actual or constructive knowledge of a pervasive risk of harm to Plaintiff's rights. As discussed above, Plaintiff has failed to establish that his constitutional rights were violated; therefore, there was no pervasive risk of harm of which Stonebreaker or Soltis should have been aware. Second, Plaintiff failed to show Stonbreaker or Soltis acted with deliberate indifference with respect to Plaintiff's medical needs. Also as discussed above, Plaintiff's medical needs were addressed by medical personnel, and, although Plaintiff may disagree with the treatment

**Qualified Immunity**

Defendants are also entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). District court and courts of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Here, as discussed above, Plaintiff's allegations fail to demonstrate

---

he received, Defendants were not deliberately indifferent to his medical needs. Finally, Plaintiff failed to establish a causal link between any inaction on the part of Stonebreaker or Soltis and the alleged violation of Plaintiff's constitutional rights because Plaintiff failed to demonstrate Stonebreaker or Soltis's subordinates were deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has failed to state a claim under a theory of supervisory liability.

that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment [Doc. 27] be GRANTED.

IT IS SO RECOMMENDED.

<u>s/Jacquelyn D. Austin</u>
United States Magistrate Judge

May 9, 2017
Greenville, South Carolina